HOWARD B. GOLDS, Bar No. 112626
Howard.Golds@bbklaw.com
CYNTHIA M. GERMANO, Bar No. 151360
Cynthia.Germano@bbklaw.com
BEST BEST & KRIEGER LLP
3750 University Avenue, Suite 400
P.O. Box 1028
Riverside, CA  92502
Telephone: (951) 686-1450
Telecopier: (951) 686-3083

Attorneys for Defendants
City of Rialto, City of Rialto Fire Department, Stephen C. Wells, Mike Peel, and Frank Bekker

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS B. DELIA, <br><br>     Plaintiff, <br><br>     v. <br><br> CITY OF RIALTO, a Public Entity; CITY OF RIALTO FIRE DEPARTMENT, a Public Agency; STEPHEN C. WELLS, Individually and as the Fire Chief for the City of Rialto; MIKE PEEL, Individually and as a Battalion Chief for the City of Rialto; FRANK BEKKER, Individually and as a Battalion Chief for the City of Rialto; STEVE A. FILARSKY, Individually and as Internal Affairs Investigator for the City of Rialto; and DOES 1 THROUGH 10 INCLUSIVE, <br><br>     Defendants. | Case No.  CV 08-03359 R (PLAx) <br><br> STATEMENT OF UNCONTROVERTED FACTS |

The Motions for Summary Judgment or in the alternative Partial Summary Judgment ("Motions") of Defendants City of Rialto ("City"), Stephen C. Wells ("Wells"), Mike Peel ("Peel"), Frank Bekker ("Bekker") and Steve Filarsky ("Filarsky") came on regularly for hearing on February 2, 2009, in Courtroom 8 of the above-entitled Court, the Honorable Judge Manuel L. Real presiding. Defendants and moving parties the City of Rialto, Stephen Wells, Mike Peel and Frank Bekker appeared by their attorneys of record Best Best & Krieger LLP by Howard B. Golds. Defendant Steve Filarsky appeared by his attorneys of record Gilbert, Kelly, Crowley & Jennett, LLP by Jon H. Tisdale. Plaintiff Nicholas B. Delia ("Delia") appeared by his attorneys of record Lackie, Dammeier & McGill by Sanjay Bansal.

After consideration of the papers in support of and in opposition to the Motions for Summary Judgment or in the Alternative, Partial Summary Judgment and the argument of counsel, the Court determines that the following facts and conclusions of law have been established:

## UNCONTROVERTED FACTS

1. Delia began his employment with the City's Fire Department in July 2000 as a "Fire Fighter," and was subsequently promoted to the rank of "Engineer." However, in February 2006, the City determined that grounds existed to discipline Delia and it proposed that he be demoted back to the rank of "Fire Fighter." After a *Skelly* Hearing was held in May 2006, a final decision was made to demote Delia in June 2006. (Transcript of Deposition of Nicolas Delia taken on December 17, 2008 ("Delia Depo."), pp. 6:20-22; 72:4-9.)

2. In August 2006 while on duty, Delia was assisting in the control of a toxic spill when he began to feel ill. He was transported to the hospital and ultimately given an off-work order by a doctor for a period of three shifts. (Delia Depo,. pp. 12:8-13:5; 14:3-7.)

3. The City became suspicious of Delia's off-work status because of the circumstances involving his previous discipline, in that he was at the time appealing his demotion. The City thereupon hired a private investigation company to conduct surveillance of Delia while he was off work and during that investigation, Delia was filmed buying building supplies, including rolls of fiberglass building insulation, at a local Lowe's home improvement store. Based upon that evidence, the City decided to undertake a formal internal affairs investigation of Delia to determine whether he was off-work based upon false pretenses. In furtherance of the investigation, it was decided that Delia would be interviewed by Filarsky. (Declaration of Stephen C. Wells in Support of Motion for Summary Judgment ("Wells Decl."), ¶¶ 3, 4.)

4. At the time of the interview, Filarsky had for a number of years been regularly representing the City and providing legal advice to it regarding labor and employment issues. As part of that work, Filarsky had previously questioned Fire Department employees in internal affairs investigations. (Wells Decl., ¶ 4.)

5. Filarsky's interview of Delia took place starting on September 18, 2006. In attendance were Filarsky, Peel, Bekker, Delia and Delia's legal counsel, Stuart Adams ("Adams"). The interview was tape recorded and subsequently transcribed ("Transcript"). (See Declaration of Michael Peel in Support of Motion for Summary Judgment ("Peel Decl."), Exhibit "A;" Peel Decl., ¶ 5; Delia Depo, pp. 41:17-42:8.)

6. Both Peel and Bekker were asked to attend the interview, although neither had any specific role in the interview other than to witness the events. (Peel Decl., ¶ 2; Declaration of Frank Bekker in Support of Motion for Summary Judgment ("Bekker Decl."), ¶ 2; Wells Decl., ¶ 5.)

7. Peel spoke once during the interview when he was asked at the very beginning by Filarsky to go through the formality of ordering Delia to answer the questions truthfully. Peel never spoke again and Bekker never spoke at all. (Transcript, p. 1:33-34; ; Peel Decl., ¶ 5; Bekker Decl., ¶ 5.)

8. The interview began at 10:02 a.m. and after some preliminary questioning, Filarsky began to question Delia about what had been purchased at Lowe's. Delia described some lumber and the building insulation and specifically stated that the insulation had not been installed and was sitting in his kitchen. Filarsky subsequently showed Delia video tape taken of him making purchases at Lowe's, including his purchase of the fiberglass insulation. (Transcript, pp. 30:38-31:30; 23:17-24:38.)

9. At some point during the interview, Filarsky asked Delia to produce the insulation for inspection and informed Delia that if he was able to do so, he would be exonerated from the charges that were the basis for the internal affairs investigation. Adams advised Delia that he didn't need to produce the materials, Filarsky and Adams then got into a fairly heated dispute over whether an inspection would be allowed, and then at some point Adams threatened to sue both Peel and Bekker. (Peel Decl., ¶¶ 3, 4; Bekker Decl., ¶¶ 3, 4; Transcript, pp. 35:27-44:39.)

1    10.    During a break in the interview Filarsky consulted with Wells.
2  Filarsky explained the situation involving the insulation and his desire to order
3  Delia to produce the insulation. Wells did not understand or believe that having
4  Delia show the insulation outside his house was a violation of Delia's rights and, in
5  fact, Wells did not witness the arguments about this issue that occurred between
6  Filarsky and Adams and which are reflected in the Transcript. Based on Filarsky's
7  comments and advice, Wells issued the order and Filarsky to conveyed the order to
8  Delia. (Wells Decl., ¶¶ 5, 6.)

9

10    11.    Neither Peel nor Bekker participated in any discussions with Filarsky
11  or Wells or anyone else about whether Delia should be ordered to show the building
12  insulation, made the decision to issue the order, or communicated the order to
13  Delia. However, at the time Filarsky gave the order, both Peel and Bekker believed
14  that the order was legal, both because Filarsky was a lawyer and because Delia was
15  not being ordered to allow anybody to enter his house. (Peel Decl., ¶¶ 6, 7; Bekker
16  Decl., ¶¶ 6, 7.)

17

18    12.    After the break, the interview then recommenced and after more
19  discussion with Adams and Delia's refusal to voluntarily produce the insulation,
20  Filarsky ordered Delia to show the building insulation to the City. (Peel Decl., ¶ 4;
21  Bekker Decl., ¶ 4; Transcript, pp. 34:24-35:25.)

22

23    13.    After a lengthy break in the interview, the parties reconvened at which
24  time Delia was presented with a written order to produce the insulation signed by
25  Wells. Wells recalls being told by Filarsky that Delia's attorney had demanded that
26  the order to show the insulation be put in writing, and believes that Filarsky drafted
27  it and then asked Wells to sign it.   (Wells Decl., ¶ 8 and Ex. "B;" Transcript, p.
28  54:14-15.)

- 4 -    STATEMENT OF UNCONTROVERTED FACTS

14. After the interview was finished, Peel and Bekker followed Delia in a City vehicle to Delia's house where they waited a few minutes for Adams who had gotten lost on the way. When Adams arrived, Delia, Adams and a union representative went into Delia's house and brought out three or four rolls of fiberglass building insulation which he placed on his front lawn. Once finished, Peel thanked Delia and Peel and Bekker drove away. Filarsky was never present at Delia's home. The entire process of putting the insulation on the lawn and having it observed by Peel and Bekker lasted about a minute. At no time did Peel and Bekker ever leave their City vehicle while they were parked at the curb in front of Delia's house and at no time did they enter Delia's house. Furthermore, the only thing removed by Delia from his house and shown to Peel and Bekker were the three or four rolls of fiberglass building insulation. (Peel Decl., ¶ 8; Bekker Decl., ¶ 8.)

## **CONCLUSIONS OF LAW**

1. Peel, Bekker, Wells and Filarsky are protected from liability by the doctrine of qualified immunity as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known because Delia has not demonstrated a violation of a clearly established constitutional right in that Delia was not threatened with insubordination or termination if he did not comply with any order given and none of these defendants entered plaintiff's house. *Pearson v. Callahan*, 555 U.S. __, (January 21, 2009, No. 07-751), 172 L. Ed. 2d 565 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 525–27 (1985); *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 887-888 (9th Cir. 1990).

2. Delia's claim against the City based on 42 U.S.C. section 1983 fails as a matter of law because neither Wells, Peel, Bekker nor Filarksy had final policymaking authority, none was the policymaker for the City for the purposes of the act about which Delia complains and Delia has provided no evidence of any longstanding practice or custom of the City or that any official with final policy-making authority ratified the conduct of which Delia complains. *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1189 (9th Cir. 2002); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 985; *Zografos v. City of San Francisco*, (Dec. 13, 2006, No. C 05-3881) N.D. Cal. [2006 Lexis 90101]; *Collins v. City of San Diego*, 841 F.2d 337 (9th Cir. 1988); *St. Louis v. Praprotinik*, 485 U.S. 112, 126 (1988); *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992); Rialto Municipal Code sections 2.34.020, 2.34.030 and 2.34.040.

Dated: March_9, 2009

_____
UNITED STATES DISTRICT COURT JUDGE